644

## CADY LUMBER CO. v. FAIN.
### No. 6875.

Circuit Court of Appeals, Ninth Circuit.
June 5, 1933.

Chandler M. Wood, C. B. Wilson, and O. C. Compton, all of Flagstaff, Ariz., and Frank E. Flynn, of Prescott, Ariz., for appellant.

Isaac Barth, of Phœnix, Ariz., and Rex E. Lee, of St. Johns, Ariz., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

SAWTELLE, Circuit Judge.

The appellee brought suit to recover damages alleged to have been caused by her having contracted typhoid fever by drinking water furnished to her by the appellant and contaminated with typhoid germs through the appellant's negligence.

Both at the close of the appellee's case and at the close of the appellant's case, the appellant moved for a directed verdict. These motions were denied by the court, and the appellant duly excepted.

A verdict for the appellee for $27,500 was returned by the jury, and judgment was entered thereon, with interest. The appellant's motion for a new trial was denied. The present appeal followed.

There are numerous assignments of error, seventeen of which are specified in the appellant's brief. The first specification deals with alleged error in the court's denial of the appellant's motion to strike the testimony of Marion E. Stroud in regard to the analyses of milk, for the reason that she tes-

tified that she made no analysis of the milk for typhoid.

The second and third specifications assert error in the court's refusal to direct a verdict for the appellant at the close of the appellee's case and at the close of all the evidence.

Three specifications relate to asserted errors in the instructions to the jury. The remaining specifications have reference to the court's alleged error in accepting the verdict of the jury, for the reason that, according to the appellant's contention, there was insufficient evidence or no evidence whatever to support a verdict in favor of the appellee, or for the reason that, in the appellant's view, the jury "wholly disregarded" certain instructions of the court. The seventeenth specification relates to the court's denial of the appellant's motion for a new trial and to the court's alleged error in accepting the verdict, which is attacked as excessive.

The appellee, who was the plaintiff below, claims that the testimony which she produced, if believed, tended to establish the following facts:

1. That the water used by the appellant for industrial purposes was polluted with typhoid germs, being drawn in part from a swamp the waters of which received the outfall from two septic tanks in the town of McNary, as well as the drainage from dumping grounds east of the town, and from toilets in the Negro quarters.

2. That the water for industrial use and the water for domestic use were kept in the same concrete sump in the appellant's power house at McNary, the two waters being separated from each other by a wooden partition.

3. That the two waters were "mixed up" "several times," such alleged "mixture" being inferred from asserted seepage indications and also being directly observed when the industrial water overflowed or "ran into" or "trickled down" "into the domestic water," from a "spillway" or "overflow" situated "right over the top of the drinking water."

4. That the appellee drank water furnished by the appellant, and was taken ill with typhoid fever about January 23, 1929.

5. That the alleged seepage and overflowing of the industrial water into the domestic water was brought to the notice of the appellant's officials or was already known to them, at least as early as the fore part of January, 1929.

6. That, according to his own testimony, Dr. W. S. Sharp, the appellant's physician,

"was afraid" that there was typhoid in the lumber camp as early as January 15, or 20, 1929; that he "had already attended two or three cases that were typhoid," which he "later diagnosed" "as typhoid"; and that he "did not report them until six months afterward," though "the object of reporting these cases was in order to get the State Board of Health—to give them an opportunity to quarantine or safeguard the health of the people by helping—get any State help that we could." "The purpose is to get what State aid you can."

The appellant introduced considerable testimony tending to contradict the material portions of the appellee's testimony. Since it is not our purpose to weigh and balance the testimony, we deem it unnecessary to analyze the appellant's case. Suffice it to say that the appellant introduced evidence tending to show that the typhoid at McNary was caused by contaminated milk purchased from three dairies over which the appellant had no control; and that it was not negligent in its efforts to furnish a pure water supply to the inhabitants of the village.

Reverting to the first specification of error, we find that the record shows that Miss Stroud, a bacteriologist of the Arizona State Laboratory at Tucson, on behalf of the plaintiff, testified in part as follows:

"The records of our office show an analysis of the milk supply of John Earl. The records of our office show the examination of samples of milk sent by the Cady Lumber Corporation from the dairy of John Earl at McNary, Arizona. The one I had here was collected October 28, 1928.

"We just did the regular milk analysis on this milk and we just made our general bacteriological count on standard methods which showed twenty thousand colonies per cc or cubic centimeter. A low count in the milk like that shows it is a good milk according to the standards. I also made an analysis of the milk from the dairy of a man named Penrod sent by the Cady Lumber Corporation in October, 1928. That shows 70,000 colonies per cubic centimeter. According to the grade of the United States standards, it would be graded as a grade B milk. I received, on or about the 25th day of October, 1928, from the Cady Lumber Corporation at McNary a bottle of milk from the Hanson Dairy. I made an analysis of that milk. That showed 8,000 colonies per cubic centimeter. My records do not show that I received from the Cady Lumber Corporation at McNary a sample of the milk from the dairy of John Earl on or about the 2nd day of February, 1929. I have the date here of February 12, 1929. The milk was received at the laboratory on February 4th. I haven't the date when it was shipped. I made an analysis of that milk. The milk showed 15,000 colonies per cc. By the United States Standards it is credited as a grade A milk. On or about the 4th day of February, 1929, I received a sample bottle of milk from the Cady Lumber Corporation at McNary, Arizona, from the dairy of Mr. Hanson. I made an analysis of that milk. The milk showed 32,000 bacteria per cubic centimeter. By the United States Standards it is a grade A milk. On the 4th day of February, 1929, I received from the Cady Lumber Corporation at McNary, Arizona, a sample bottle of milk from the dairy of Mr. Penrod. I made an analysis of that milk. The milk showed 68,000 colonies per cc. By United States Standards it is a grade B milk."

In answer to a question by the appellant's counsel, Miss Stroud stated that she had "made no analysis for typhoid" in connection with the milk. Whereupon the appellant moved that the witness' testimony as to the analysis of the milk be stricken, on the ground that it was not within the issues and immaterial. The court denied the motion.

We believe that such denial was prejudicial error. Since one of the principal issues of fact submitted to the jury was that the source of the typhoid infection was milk and not water, any testimony as to the good quality or grade of the milk would be damaging to the appellant. Inasmuch as no analysis of the milk was made for typhoid, the admission of such testimony is, of itself, ground for the reversal of the judgment.

In this connection we refer to the uncontradicted testimony of Dr. H. T. Southworth, who for nearly twenty years has been city health officer of Prescott, Arizona, and who was a witness on behalf of the appellant: "The number of bacteria in milk has not a thing in the world to do with a possibility of its having typhoid germs in it. * * * There is no relation at all between the grading of milk and whether or no it contains typhoid germs. * * * The grading of milk and the amount of bacteria has no relation to the presence of typhoid germs."

The appellee quotes this very statement by Dr. Southworth as "curing" whatever error there might have been committed in admitting the evidence. But it must be remembered that the jury might have believed Miss Stroud's unqualified statement that milk

of so low a bacteriological count was "good," and might not have accepted Dr. Southworth's comment on the pertinence of such count.

In a further attempt to justify the admission of Miss Stroud's testimony, the appellee argues that "the evidence refutes any inference that might have been drawn to the effect that an analysis had been made of the milk which showed contamination, and that appellee was keeping out of the evidence the result of the analysis." We have carefully searched the record for any evidence that would have warranted any such "inference" as that suggested by the appellee. The analysis of the milk was made at the appellant's instance; hence by no stretch of the imagination could the appellee be charged with withholding evidence for failing to put the analysis upon the stand.

In the expectation that the case will be retried, we have refrained from expressing any opinion upon the weight or the credibility of the testimony, or upon the other specifications, based on alleged errors that may not recur at the next trial.

As we have already pointed out, the admission of Miss Stroud's testimony was prejudicial.

Accordingly, the judgment is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded, with instructions.